Submitted February 24, 2011, vacated and remanded April 18, 2012

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

PHILIP LEE KEPHART,
*Defendant-Appellant.*

Lane County Circuit Court
200801786; A141148

277 P3d 570

Peter Gartlan, Chief Defender, and Kristin A. Carveth, Deputy Public Defender, Office of Public Defense Services, filed the briefs for appellant.

John R. Kroger, Attorney General, and David B. Thompson, Interim Solicitor General, filed the brief for respondent.

Before Ortega, Presiding Judge, and Brewer, Judge, and Sercombe, Judge.

ORTEGA, P. J.

## ORTEGA, P. J.

Defendant appeals a judgment convicting him of aggravated murder by abuse and imposing restitution in the amount of $1,171,994.47 to be paid to the state. On appeal, in three assignments of error, defendant challenges $1,168,494.47 of the restitution award. We vacate and remand.

Defendant was charged with causing the death of his daughter by engaging in a pattern of assault against her over a period of years. After plea negotiations, defendant waived a jury trial and pleaded guilty to one count of aggravated murder by abuse. Among other things, the parties stipulated that the 1989 version of ORS 163.105, which was in effect in 1991, would apply and that application of the statute would result in defendant receiving a life sentence with a 30-year minimum and eligibility for parole after 20 years.[1] Specifically, the plea petition provided that "[t]he parties agree that the

---

[1] ORS 163.105 (1989) provided, in part:

"Notwithstanding the provisions of ORS chapter 144, ORS 421.165 and 421.450 to 421.490:

"(1)(a) When a defendant is convicted of aggravated murder as defined by ORS 163.095, the defendant shall be sentenced, pursuant to ORS 163.150, to death, life imprisonment without the possibility of release or parole or life imprisonment.

"* * * * *

"(c) If sentenced to life imprisonment, the court shall order that the defendant shall be confined for a minimum of 30 years without the possibility of parole, release on work release or any form of temporary leave or employment at a forest or work camp.

"(2) At any time after 20 years from the date of imposition of a minimum period of confinement pursuant to paragraph (c) of subsection (1) of this section, the State Board of Parole and Post-Prison Supervision, upon the petition of a prisoner so confined, shall hold a hearing to determine if the prisoner is likely to be rehabilitated within a reasonable period of time. The sole issue shall be whether or not the prisoner is likely to be rehabilitated within a reasonable period of time. * * *

"* * * * *

"(3) If, upon hearing all of the evidence, the board, upon a unanimous vote of all five members, finds that the prisoner is capable of rehabilitation and that the terms of the prisoner's confinement should be changed to life imprisonment with the possibility of parole, or work release, it shall enter an order to that effect and the order shall convert the terms of the prisoner's confinement to life imprisonment with the possibility of parole or work release. Otherwise the board shall deny the relief sought in the petition."

defendant is sentenced to life in prison with a 30-year mini-mum, in the language of the 1989 statute." At the plea hear-ing, the parties' agreement regarding the application of the 1989 statute was communicated to the court as follows: "The parties agree and stipulate that the sentencing statute that was in effect in 1991, the 1989 version of ORS 163.105, paren (1), paren small (c), applies." The parties also agreed that defendant would pay restitution for the burial of the victim and that the state would request restitution for the care and treatment of the victim prior to her death. Although defen-dant could object to the request for restitution for the victim's care and treatment, he agreed not to request an evidentiary hearing. Under the agreement, the trial court was to be bound by the parties' negotiations and to impose the agreed-upon sentence.

After the sentencing hearing, the state submitted a restitution schedule in which it sought $3,500 for crime vic-tim compensation and $1,168,494.47 payable to the Depart-ment of Human Services (DHS). Defendant objected to the restitution for DHS, asserting that the 1991 restitution stat-utes applied and that the restitution could not be imposed. Citing *State v. Dillon*, 292 Or 172, 637 P2d 602 (1981), he asserted that the state could not recover from defendant the funds expended for the victim's care and treatment because "[t]here is no cognizable theory of tort law recovery that gives DHS a cause of action against [defendant]." He also asserted that he did not have the ability to pay the restitution requested by the state. The court, nonetheless, imposed the restitution set forth in the restitution schedule.

In his first assignment of error, defendant contends that the trial court erred in imposing that restitution because no theory of civil liability would have allowed the state to recover the money expended for the victim's medical care and treatment from him. He also asserts, in his second and third assignments of error, that the trial court erred when it failed to determine whether defendant had the ability to pay the $1,168,494.47 in restitution and, instead, delegated respon-sibility for making that determination to the officer supervis-ing him when he is released from prison. All of defendant's assertions are predicated on the 1991 versions of the restitu-tion statutes; he asserts that "the parties agreed in the trial

court that the 1991 sentencing statutes would apply." He notes, on reply, that he asserted that the parties had stipulated to the application of the 1991 restitution statutes in his objection to the restitution request before the trial court.

The state responds that all of defendant's assignments of error fail because they are premised on the application of the 1991 versions of the restitution statutes, which the state asserts do not apply. Specifically, according to the state, the restitution award was proper under the current version of the restitution statutes and "the parties' specific and limited agreement as to the application of * * * ORS 163.105 [(1989)] did not include a stipulation that the restitution statutes in effect in 1991 would control the court's decision concerning the state's request for restitution."

Defendant does not dispute the state's assertion that the restitution award was permissible under the current version of the restitution statutes. The state, for its part, does not present any cogent argument that the award was proper under the 1991 version of the restitution statutes. Instead, their entire dispute centers around what their stipulation was and what statute the trial court applied in awarding restitution.

Thus, whether the award of restitution was proper depends on whether or not the parties stipulated to the application of the 1991 version of the restitution statutes as part of the plea negotiations. The parties dispute what their stipulation was in that regard. The trial court's opinion regarding restitution does not address that issue, nor does it explicitly state what version of the restitution statutes the court applied. The trial court is in the best position to resolve both of those predicate issues and should have the opportunity to address them in the first instance. For that reason, we vacate the judgment and remand the case for the trial court to consider and address both of those questions.

Vacated and remanded.